UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NAUMES, INC., an Oregon corporation,

                Plaintiff,

        v.

CHUBB CUSTOM INSURANCE
COMPANY, a Delaware stock
insurance company,

                Defendant.

OPINION AND ORDER
Civil No. 05-1327-HA

HAGGERTY, Chief Judge:

Naumes, Incorporated, (plaintiff or Naumes) commenced this action against Chubb

Custom Insurance Company (defendant or Chubb), asserting claims for breach of insurance

contract, breach of implied duties, and seeking a Declaratory Judgment. The suit stems from

defendant's refusal to defend plaintiff in another lawsuit (hereinafter the underlying action).

Defendant filed a Motion for Summary Judgment [11], which was followed shortly

thereafter by a Motion for Partial Summary Judgment [24] by plaintiff. Oral argument is deemed

1  -- OPINION AND ORDER

unnecessary.  For the reasons set forth below, defendant's Motion for Summary Judgment is

denied and plaintiff's Motion for Partial Summary Judgment is granted.

## FACTUAL BACKGROUND

The essential facts in the instant case are not in dispute.  Pertinent provisions of the

insurance policies that are relevant to the motions seeking summary judgment are reviewed

below.

Plaintiff, an Oregon corporation, is engaged in the business of growing fruit and

manufacturing fruit juice concentrates and "premixes."  Defendant is a stock insurance company

organized under the laws of Delaware, and maintains a principal place of business in New

Jersey.  Defendant issued two general liability insurance policies to plaintiff that are numbered

7949-09-01 and 7949-09-03 (collectively referred to as the Policies).

Copies of the Policies are attached to plaintiff's Complaint in this action.  The Policies

were delivered to plaintiff at its place of business in Oregon, and there is no dispute that Oregon

law applies in this action.

## Underlying Lawsuit against Plaintiff

In 2003, plaintiff received notice of claims filed against it regarding its role in delivering

a concentrate/mix for a diet drink that allegedly contained nonconforming ingredients.  The

claims arose from allegations in a lawsuit brought by Healthy World, Incorporated, (HW) in

July, 2003, in the Superior Court of the State of California, County of Los Angeles (hereinafter

referred to as the California litigation), against Celebrity Product Drinks (CPD) and other

defendants.  Healthy World later named plaintiff as a defendant in a Second Amended

Complaint.

2  -- OPINION AND ORDER

The underlying lawsuit alleges that beginning in April 2002, HW entered into a series of contracts with CPD through CPD's agent, KSA Enterprise (KSA). Pursuant to these agreements, HW bought tens of thousands of bottles of "The Original Hollywood Celebrity Diet Drink" (Diet Drink) from CPD.

Healthy World required that the Diet Drink comply with Japanese food and drug regulations. Those regulations mandated that the Diet Drink could not contain (1) alpha tocopheryl acetate (also known as Vitamin E acetate or synthetic Vitamin E) and (2) biotin.

Healthy World contends that it paid over $444,700 for more than three container loads of Diet Drink from CPD and KSA, and undertook substantial advertising and market preparation in full reliance upon representations from CPD and KSA that the Diet Drink complied with the requirements of the Japanese food and drug authorities. Allegedly, however, the Diet Drink that was provided to HW contained both biotin and Vitamin E acetate.

On December 24, 2002, Japanese authorities issued an order compelling a recall of the Diet Drink for failure to meet Japanese food and drug regulations. Defendant asserts that the noncompliance stemmed from CPD's use of plaintiff's "component product" (vitamin and mineral fortified juice concentrate premix), in manufacturing the Diet Drink. Allegedly, use of this premix caused the presence of the Japanese-banned ingredients Vitamin E and Biotin.

Plaintiff has been sued by HW for negligence and breach of warranty for allegedly delivering a nonconforming product. Plaintiff tendered notice to defendant seeking defense on September 13, 2003. Counsel for CPD tendered notice to defendant for defense in October 2003. Shortly thereafter, CPD also initiated cross-claims against plaintiff in the California

3 -- OPINION AND ORDER

litigation.  The cross-claims brought by CPD against plaintiff seek declaratory relief establishing

CPD's right to indemnity from plaintiff.   Defendant has denied coverage.

**The Policies**

At times relevant to this litigation, plaintiff was insured by defendant pursuant to the

Policies.  These Policies promised, in part, to defend and indemnify plaintiff for claims of

liability for "property damage."  Pl.'s Ex. A, p. 18.

Liability for "property damage" under the Policies includes "loss of use of tangible

property that is not physically injured" or claims against plaintiff for "physical injury to tangible

property, including resulting loss of use of that property."  *Id*. at 46.

## STANDARDS

### 1.    Summary Judgment

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with affidavits, if any, show there is

no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c); *see Bahn v. NME Hosps., Inc.*,

929 F.2d 1404, 1409 (9th Cir. 1991).  The moving party carries the initial burden of proof and

meets this burden by identifying portions of the record on file that demonstrate the absence of

any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  Once

the initial burden is satisfied, the burden shifts to the non-moving party to demonstrate through

the production of probative evidence that there remains an issue of fact to be tried.  *Id.*

The court must view the evidence in the light most favorable to the non-moving party.

*Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (citations omitted).

All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the

moving party. *MetroPCS, Inc. v. City & County of San Francisco*, 400 F.3d 715, 720 (9th Cir.

2005) (citation omitted).  Where different ultimate inferences may be drawn, summary judgment

is inappropriate. *Sankovich v. Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981) (citing Fed.

R. Civ. P. 56(c).

Deference to the non-moving party does have some limits.  The non-moving party "must

set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The

"mere existence of a scintilla of evidence in support of the [non-moving party's] position would

be insufficient." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 252 (1986).  Therefore, where

"the record taken as a whole could not lead a rational trier of fact to find for the non-moving

party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475

U.S. 574, 587 (1986).

### 2.      Principles of Insurance Policy Construction

Generally, "[t]he interpretation of an insurance policy is a question of law." *N. Pac. Ins.*

*Co. v. Hamilton*, 22 P.3d 739, 741-42 (Or. 2001) *(*citing *Hoffman Const. Co. v. Fred S. James &*

*Co.,* 836 P.2d 703, 706 (Or. 1992)).  In interpreting an insurance policy, the court must focus on

the intent of the parties, which is determined by looking to the terms and conditions of the

policy.  *Id.* (citations omitted).  The policy must be considered as a whole and viewed by its four

corners, and all parts and clauses must be construed to determine if any clause is modified,

limited, or controlled by another.  *Id.* (internal quotations and citations omitted); *see also Red*

*Lion Hotels, Inc. v. Commonwealth Ins. Co. of Am.*, 33 P.3d 358, 361 (Or. App. 2001) (under

Oregon law, the interpretation of a provision in an insurance policy is a question of law; the

court's task is to interpret the intent of the parties from the terms and conditions of the insurance policy).

If a term of an insurance policy is ambiguous, the court must construe the term against the drafter of the policy. *Hamilton*, 22 P.3d at 741-42; *Red Lion*, 33 P.3d at 361 (if there is more than one reasonable interpretation, the court analyzes each reasonable interpretation in light of the specific and broad contexts in which the term is used in the policy; if more than one reasonable interpretation remains, the policy is construed against the drafter).

A term is ambiguous, for the purposes of this rule of construction, if there are two or more reasonable interpretations of the term when examined in light of (among other things) the particular context in which the term is used in the policy and the broader context of the policy as a whole. *Id.* (citing *Hoffman*, 836 P.2d at 706). A term in an insurance policy may also be ambiguous if its meaning is not comprehensible for reasons such as indefiniteness, erroneous usage, or form of expression. *Id.*

### 3.      Duty to Defend

"Whether an insurer has a duty to defend an action against its insured depends on two documents:  the complaint and the insurance policy." *Ledford v. Gutoski*, 877 P.2d 80, 82-83 (Or. 1994) (*en banc*) (citations omitted). An insurer has a duty to defend an insured if allegations made against the insured could, without amendment, impose liability for conduct covered by the insured's policy. *Abrams v. Gen. Star Indem. Co.*, 67 P.3d 931, 935 (Or. 2003); *Ledford*, 877 P.2d at 82-83 (quotations omitted).

In determining whether an insurer has a duty to defend, a court must look only at the facts alleged in the complaint and determine whether they provide any basis for recovery.

*Ledford*, 877 P.2d at 82-83.  Any ambiguity in the complaint as to whether the allegations could

be covered must be resolved in favor of the insured.  *Id.*

In short, resolving a challenge as to whether an insurer has a duty to defend requires a

court to, in part, interpret the underlying lawsuit's pleadings as presented, and to reasonably

determine whether the pleadings describe, or may describe, a covered loss.  *See Abrams*, 67 P.3d

at 935-36.

## DISCUSSION

The parties agree that plaintiff's partial summary judgment motion is advanced under the

"Property Damage" coverage it purchased from defendant.  The policies define the term

"property damage" as:

• Physical injury to tangible property, including resulting loss of use of that property.  All
such loss of use shall be deemed to occur at the time of the physical injury that caused it:

or

• Loss of use of tangible property that is not physically injured.  All such loss of use shall
be deemed to occur at the time of the **occurrence** that caused it.

Defendant has denied coverage on the theory that plaintiff has been sued for a simple

alleged breach of contract arising out of plaintiff's failure to provide a premix that complied with

Japanese regulations.  Such liability is defined through the scope and enforcement of those

Japanese regulations, and is not based upon any alleged "physical injury" or "property damage."

Specifically, defendant contends that there is no duty to defend because "there are no allegations

of the required physical injury and property damage."  Df.'s Mem. in Opp'n. at 4.  Defendant

contends that the underlying lawsuit alleges nothing more than that plaintiff's premix was

negligently incorporated into the Diet Drink, and that there was no "actual injury" or "physical damage."

It is true that in absence of specific language to the contrary, liability policies are not a warranty or performance bond for a contractor's workmanship. *Timberline Equip. Co. v. St. Paul Fire & Marine Ins. Co.*, 576 P.2d 1244, 1246 (Or. 1978). Liability policies insure against injury to persons and damage to other property caused by inferior workmanship or products. *Id*. The risk being insured by such policies is the risk of tort liability for physical damages to others, and not contractual liability because the insured's product is not of the quality for which the damaged person bargained. *See id*.; *see also Oak Crest Const. Co. v. Austin Mut. Ins. Co.*, 998 P.2d 1254, 1257-58 (Or. 2000) (where a plaintiff alleges only breach of contract, there is no "accident" within the meaning of the liability policy and no coverage under that policy). The mere incorporation of an insured's product as a component in a product is not "actual injury" to property. *See Wyoming Sawmills, Inc. v. Transp. Ins. Co.*, 578 P.2d 1253, 1256 (Or. 1978).

However, insurers may not refuse coverage under a liability policy simply because a claim may contain an allegation for breach of warranty. Instead, the nature of the damage alleged controls coverage. *See Goodyear Rubber & Supply Co. v. Great Am. Ins. Co.*, 471 F.2d 1343, 1344 (9th Cir. 1973) (applying Oregon law). Under the circumstances presented here, the California litigation may or may not encompass allegations asserting a breach of warranty claim. But there can be no doubt that plaintiff is faced with allegations of causing property damage.

The pleadings leveled against plaintiff include allegations that plaintiff's product was combined erroneously with other products to produce a diet drink that contained ingredients that

8  -- OPINION AND ORDER

rendered the drink useless in the specific market for which the drink was intended.  As a direct

result, plaintiff was sued by HW because, in part:

> the Japanese government ordered the recall of the Diet Drink, the Diet Drinks
> ultimately had to be destroyed and the problem was highly publicized in Japan
> resulting . . . in a direct loss of business.

HW Second Amended Complaint at ¶ 104-108.

Defendant's attempt to establish that under these circumstances there was no

"occurrence" or "accident" as required under the terms of the policies fails.  Property damage

arising from a negligent performance of a contract can be construed as being "caused by an

accident."  *See Oak Crest*, 998 P.2d at 1257.  The alleged damage or injury for which plaintiff is

being sued must be viewed reasonably as an unexpected or unintended consequence of plaintiff's

conduct – specifically, the erroneous introduction of a premix containing substances banned in

the market for which the final product was intended.  That occurrence led directly to the loss of

use of, and the destruction of, other tangible property, the Diet Drink.

After examining the Policies as a whole and their "four corners," and interpreting the

intent of the parties from the terms and conditions of the Policies, this court is compelled to

conclude that a duty to defend plaintiff on the part of defendant arose when plaintiff was sued by

HW and by CPD for, in part, property damages occurring after plaintiff's premix was introduced

to the Diet Drinks at issue.  At the very least, the underlying lawsuits against plaintiff create an

ambiguity as to whether the relevant terms of the Policies were intended to provide coverage for

the kind of liability and damages alleged.  Finding a duty to defend under the circumstances

presented here is a reasonable interpretation of those relevant terms.  Defendant's ability to refer

to another reasonable interpretation of the terms fails to defeat defendant's duty to defend.

9  -- OPINION AND ORDER

Instead, these terms must be construed against defendant.  *Hamilton*, 22 P.3d at 741-42; *Red Lion*, 33 P.3d at 361.

Similarly, defendant's assertion that an "economic loss rule" should apply here to obviate the duty to defend lacks merit.  There is no question that the underlying litigation alleges that tangible property, in the form of the Diet Drink, has been altered and damaged.  The Diet Drink was bottled specifically for the Japanese market, and the underlying litigation asserts that after the Japanese recall, the Diet Drink had to be destroyed.  No persuasive evidence is presented that the damaged product could have been sold in another market.

The policies also contain language excluding coverage for damage to "impaired property."  In the Policies, the term "impaired property" means tangible property, other than plaintiff's product or work, that cannot be used or is less useful because either (1) the property incorporates plaintiff's product or work that is known or thought to be defective, deficient, inadequate, or dangerous, or (2) plaintiff has failed to fulfill the terms of a contract.  The exclusion is applicable if such property can be restored to use by the repair, replacement, adjustment or removal of plaintiff's product or work, or plaintiff fulfills the terms or conditions of an underlying agreement.

There is no evidence that the damaged property, the Diet Drink, could have been restored to use by any repair, replacement, or removal of plaintiff's product or work.  Accordingly, this exclusion cannot be construed as applicable.

Finally, this court notes that defendant objects to plaintiff's Third Claim for Relief on grounds that it either advances (1) a "bad faith" claim sounding in tort, which Oregon courts have rejected, or (2) a duplicative contractual breach claim.  *See Employers' Fire Ins. Co. v. Love*

*It Ice Cream Co.*, 670 P.2d 160, 165 (Or. App. 1983) (an insurer's bad faith refusal to pay policy benefits to its insured sounds in contract and is not an actionable tort in Oregon).

Plaintiff clarifies that its Third Claim presents alternative allegations that defendant breached an implied contractual duty of good faith. Defendant's argument that this claim must be dismissed as duplicative is rejected.

## CONCLUSION

This court concludes that under Oregon law, defendant is obligated to defend plaintiff against the claims in the underlying action. Accordingly, for the foregoing reasons, plaintiff's Motion for Partial Summary Judgment is GRANTED, and defendant's Motion for Summary Judgment is DENIED. The parties are ordered to confer and file a Joint Status Report no later than January 31, 2007, that describes any remaining issues to be resolved in this matter or, if appropriate, includes a draft Judgment (and any objections to the draft) for this court's review.

IT IS SO ORDERED.

Dated this __5__ day of January, 2007.

                                             /s/ Ancer L. Haggerty
                                             Ancer L. Haggerty
                                             United States District Judge

11 -- OPINION AND ORDER